E-FILED
Friday, 19 August, 2005 03:42:09 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ILLINOIS

AT PEORIA

**FILED**

AUG 1 9 2005

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Criminal No. 05-10055 |
| CHAD E. STEINER, | ) VIO: Title 18, United States Code, Sections |
| | ) 1343, 514 and 1957(a) |
| Defendant. | ) |

## INDICTMENT

THE GRAND JURY CHARGES:

**COUNTS 1 and 2**
(Wire Fraud)

INTRODUCTION

1. Beginning in or about 2001 and continuing thereafter until the present, in Peoria and Tazewell Counties, in the Central District of Illinois, and elsewhere, CHAD E. STEINER ("STEINER"), a financial consultant in a Peoria, Illinois brokerage firm, devised and executed a scheme to defraud elderly clients and others in Peoria and Tazewell Counties of over $600,000 through false and

1



fraudulent pretenses, representations, and promises in the solicitation of personal loans from the clients.

2. In the execution of his scheme and artifice to defraud, STEINER made several misrepresentations and omissions of material fact to clients and others. These representations and omissions included those concerning the reason for the loans and the source of funds for repayment of the loans.

3. STEINER did not use the clients' funds as represented but instead used the funds to support a lavish lifestyle.

4. STEINER held a position as a financial consultant at a brokerage firm in Peoria, Illinois and was licensed by the State of Illinois to sell stocks and other securities.

The Scheme and Artifice

5. Beginning in or about 2001 and continuing thereafter until the present, in the Central District of Illinois and elsewhere, the defendant, CHAD E. STEINER, knowingly devised and executed a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

6. Beginning in or about 2001, STEINER solicited another financial consultant, J.P., for loans to pay his mortgage and other expenses. STEINER falsely represented that repayment would not be a problem because his family inherited $8 million and further that his share was $1.5 million.

7. It was further a part of the scheme that, unbeknownst to the brokerage firm which employed him, STEINER solicited personal loans from clients.

8. In approximately 2003, STEINER began asking a client (hereafter, C.S.) for personal loans. STEINER told C.S. that his grandfather died and STEINER had rights to the trust fund. As before, STEINER represented that he would receive $8 million from the trust fund and those funds would be used to repay C.S. In truth and fact, STEINER knew there was no trust fund.

9. At STEINER's request, C.S. obtained loans against his stocks held by the brokerage firm. Later, STEINER represented to C.S. that he had repaid the money borrowed from the brokerage account. In truth and fact, STEINER had not repaid the loans.

10. It was further a part of the scheme that STEINER agreed to purchase Montana property from C.S. for $970,000. Continuing the deception, STEINER told J.P. that he put J.P.s name on the deed for 20 percent interest of the Montana property and that J.P.'s share was worth $150,000. In truth and fact, STEINER

did not have funds with which to purchase the property and did not put J.P.'s name on the non-existent deed.

11. In May 2005, STEINER gave J.P. a check purportedly drawn on Dunlap Better Banks. The check, dated May 17, 2005 for $19,000, was given to J.P. in payment of the loans J.P. made to STEINER. In truth and fact, the check was counterfeit.

12. In June 2005, STEINER gave C.S. two checks, one dated June 6, 2005 for $360,000 and another dated June 15, 2005 for $1,470,000. STEINER told C.S. not to cash the checks until June 15, 2005 because that was when STEINER would receive $8 million from the trust fund. As STEINER well knew, the checks were counterfeit and he had no expectation of receiving $8 million.

13. STEINER explained to one client (hereafter, B.R.M.) that, among other things, he needed funds for an attorney to settle a legal battle over a family trust fund. To obtain the funds, STEINER arranged for B.R.M. to obtain a home equity line of credit through the brokerage firm so that B.R.M. could loan the funds to STEINER. STEINER again falsely represented that he needed the money until he received a large sum of money from a trust fund.

14. In early 2005, B.R.M. began complaining to STEINER that B.R.M. needed to be repaid. STEINER gave B.R.M. a check for $99,700.00

4



in repayment of the loan. In truth and fact, the bank and account number identified on the check did not exist and the check was counterfeit.

15. In May 2005, a family member of STEINER's told B.R.M. that a family member had provided funds for repayment of the loans. Thereafter, B.R.M. received a statement from the brokerage firm reflecting that the home equity loan had been paid. In truth and fact, a family member did not provide the funds for repayment. Rather, the funds for repayment were fraudulently obtained from another of STEINER'S clients (hereafter, J.T.).

16. In late spring 2005, STEINER and a family member repeatedly asked J.T. to loan STEINER $100,000. When J.T. told STEINER he did not have the money to loan him, STEINER told J.T. that J.T. could take the money out of J.T.'s pension fund. After J.T. agreed, STEINER arranged for J.T. to borrow against J.T.'s pension fund account at the brokerage firm.

17. Shortly after the $100,000 loan, J.T. loaned STEINER another $24,000 because STEINER falsely represented that he needed the funds to pay off a car loan to clear the way for STEINER to get the trust fund money to repay J.T.

18. Once again STEINER represented that he would repay J.T. with proceeds from his trust fund. In truth and fact, as STEINER well knew, he was not receiving money from a trust fund.



19. In approximately June 2005, STEINER gave J.T. a check for $157,000 as repayment for the loans. The check was, in fact, counterfeit.

20. As a result of the scheme and artifice to defraud, CHAD E. STEINER, defrauded clients and others of over $600,000.

## WIRE COMMUNICATIONS

21. On or about the dates set forth below, in the Central District of Illinois, and elsewhere,

**CHAD E. STEINER,**

defendant herein, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, and attempting so to do, that being the receipt of funds, did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, the wire transfer of funds as set forth below:

| Count | Date | Transaction |
|---|---|---|
| 1 | 3/16/05 | Transfer of $35,000 from brokerage account in Delaware to account at Herget National Bank in Pekin, IL |



|   |         |                                                                                                     |
|---|---------|-----------------------------------------------------------------------------------------------------|
| 2 | 4/19/05 | Transfer of $7,000.00 from brokerage account in Delaware to account at Herget National Bank in Pekin, IL |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 3 - 5
(Fictitious Obligations)

On or about the below-listed dates, at Peoria, in the Central District of Illinois, and elsewhere,

### CHAD E. STEINER,

defendant herein, did pass and offer within the United States, the below-identified false and fictitious documents, that being checks, purporting and contriving through scheme and artifice to be a financial instrument issued under the authority of an organization:

| Count | Date    | Item                                                                      | Amount       |
|-------|---------|---------------------------------------------------------------------------|--------------|
| 3     | 5/17/05 | Check purporting to be drawn on Dunlap Better Banks issued to J.P.        | $19,000.00   |
| 4     | 5/23/05 | Check purporting to be drawn on BF issued to B.R.M.                       | $99,700.00   |
| 5     | 6/22/05 | Check purporting to be drawn on Bank of Farmington issued to J.T.         | $157,000.00  |

All in violation of Title 18, United States Code, Section 514.

## COUNT 6
(Prohibited Monetary Transaction)

On or about January 18, 2005, in the Central District of Illinois, and elsewhere,

**CHAD E. STEINER,**

defendant herein, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution affecting interstate commerce, in criminally derived property that was of a value greater than $10,000, that is the transfer of United States currency, funds, and monetary instruments to Peoria BMW in the amount of $51,709.62 by a check drawn on the Better Banks, a financial institution, for the purchase of a 2005 BMW convertible, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Section 1343, said statute being specified in Title 18, United States Code, Section 1961(1);

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNT 7
(Prohibited Monetary Transaction)

On or about March 23, 2005, in the Central District of Illinois, and elsewhere,

**CHAD E. STEINER,**

defendant herein, did knowingly engage and cause to be engaged in a monetary transaction by, through, and to a financial institution affecting interstate commerce, in criminally derived property that was of a value greater than $10,000, that is the transfer of United States currency, funds, and monetary instruments to Peoria BMW in the amount of $53,283.52 by a check drawn on the Better Banks, a financial institution, for the purchase of a 2005 BMW 645 ci automobile, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Section 1343, said statute being specified in Title 18, United States Code, Section 1961(1);

In violation of Title 18, United States Code, Sections 1957(a) and 2.

A True Bill.

s/Foreperson

Foreperson

s/ U.S. Attorney

JAN PAUL MILLER
UNITED STATES ATTORNEY

DJK

1:05-cr-10055-JBM    # 1    Page 10 of 10